# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 0213 |
| | ) | |
| LM PROPERTY and CASUALTY | ) | Honorable Joan B. Gottschall |
| INSURANCE COMPANY, a corporation | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

David Barber ("Barber") sued Defendant LM Property and Casualty Insurance Company ("LMPC") to enforce an arbitration award. LMPC has moved to dismiss Barber's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, LMPC's motion is granted.

## I. BACKGROUND

Barber was involved in a motor vehicle accident and settled with the other driver for $58,000. Barber then brought a claim for underinsured motorist benefits under his policy with LMPC. The parties submitted Barber's underinsured motorist claim to arbitration. Arbitrators heard the case and awarded Barber $275,000 on August 30, 2009. LMPC rejected the award about four days later. Barber eventually responded with this action, in which he asks the court to declare that the arbitration award is binding (Count I), seeks enforcement of the award (Count II), and requests statutory damages on grounds that LMPC acted unreasonably and vexatiously when it rejected the award (Count III).

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must take "all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted). To survive a motion to dismiss, a plaintiff's claim needs to be "plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), which occurs when there are enough facts that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The court, however, is not obligated to accept the truth of legal conclusions or unsupported conclusions of fact. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

Although this case is in federal court, it turns on Illinois law. "[T]he duty of the federal court, sitting in diversity, is to determine the content of state law as the highest court of the state would interpret it." *Allstate Ins. Co. v. Menards, Inc*., 285 F.3d 630, 636 (7th Cir. 2002) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 80 (1938)). When the highest state court has not decided an issue, federal courts should give "great weight" to the state appellate court decisions and should deviate from appellate court holdings only when there are "persuasive indications that the highest court of the state would decide the case differently." *Id.* at 637 (citing *West v. Am. Tel. & Tel. Co*., 311 U.S. 223, 237 (1940); *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001); *Lexington Ins. Co. v. Rugg & Knopp, Inc*., 165 F.3d 1087, 1090 (7th Cir. 1999); *Allen v. Transamerica Ins. Co*., 128 F.3d 462, 466 (7th Cir. 1997)).

## III.  ANALYSIS

### A.  Although Barber's Policy Does Not Contain a Trial *De Novo* Clause, LMPC has an Implied Right to Trial to the Extent the Award Exceeds $20,000

LMPC argues that, consistent with *Zappia v. St. Paul Fire and Marine Insurance Company.*, 364 Ill. App. 3d 883 (1st Dist. 2006), the following language from Barber's Policy allows it to reject

2

the arbitral award and proceed to trial (a trial *de novo*): "Any decision made by arbitrators shall be binding for the amount of damages not exceeding the Financial Responsibility limits for bodily injury or death set forth in the Illinois Vehicle Code."  (Mot. to Dismiss at 3.)  *Zappia* held that a policy with similar language enabled the parties to reject the arbitral award and proceed to trial.  364 Ill. App. 3d at 887-88.  Nevertheless, LMPC's reliance on *Zappia* is misplaced.  While the policy at issue in *Zappia* contained similar language,[1] it apparently also contained language that "expressly allowed [the insured] to demand trial" in the event that the arbitral award was more than the $20,000 Illinois Vehicle Code Financial Responsibility limit.  *Zappia*, 364 Ill. App. 3d at 887; *see also* 625 Ill. Comp. Stat. 5/7-203 (West 2011) (setting forth the Illinois Vehicle Code's Financial Responsibility limits). Barber's policy lacks any such language.  Thus, LMPC's arguments that Barber's Policy contains an express trial *de novo* clause or a so-called right-to-reject clause are incorrect.  *Compare Am. Family Mut. Ins. Co. v. Stagg*, 393 Ill. App. 3d 619, 620 (5th Dist. 2009) (recognizing the presence of a trial *de novo* provision where the policy expressly provided a right to trial if the arbitral award exceeded a certain amount); *Costello v. Liberty Mut. Fire Ins. Co.*, 376 Ill. App. 3d 235, 237 (5th Dist. 2007) (same); *Shultz v. Atlantic Mut. Ins. Co.*, 367 Ill. App. 3d 1, 2 (1st Dist. 2006) (same); *Samek v. Liberty Mut. Fire. Ins. Co.*, 341 Ill. App. 3d 1045, 1047 (1st Dist. 2003) (same); *Kost v. Farmers Auto. Ins. Ass'n*, 328 Ill. App. 3d 649, 651 (5th Dist. 2002) (same); *Parker v. Am. Family Ins. Co.*, 315 Ill. App. 3d 431, 432 (3d Dist. 2000) (same).

The Policy is clear, however, that arbitration awards in the underinsured motorist context are binding only to the extent of $20,000 ("Any decision made by the arbitrators shall be binding for the amount of damages not exceeding the Financial Responsibility limits for bodily injury or death set

---

[1]      *Zappia*, 364 Ill. App. 3d at 884 ("A decision agreed to by two of the arbitrators will be binding for amounts of damages that are up to the minimum financial responsibility limits as prescribed by Illinois law.")

forth in the Illinois Vehicle Code." (Compl., Ex. A, Part 4, ¶ 4.)). Barber thus has an arbitral award for $275,000 that is binding only to the extent of $20,000, less than he already recovered from the other driver.

As LMPC argues, under Illinois law there is no waiver of the right to a trial absent clear language in the policy stating so. *See Stratford West Homeowners Ass'n v. Country Mut. Ins. Co.,* 338 Ill. App. 3d 288, 290-91 (3d. Dist. 2003); *De Groot v. Farmers Mut. Hail Ins. Co.,* 267 Ill. App. 3d 723, 725 (3d. Dist. 1994). Since the policy makes clear that the arbitral award is binding only to the extent of $20,000 and is otherwise silent about whether the right to trial is waived, this law supports LMPC's argument that it cannot be compelled to pay the full arbitral award and is entitled to bring an action *de novo* on the issue of the damages it owes Barber.[2]

LMPC's argument is complicated by a line of Illinois cases holding that insurance policies which make arbitral awards binding to a limited extent (usually $20,000) but non-binding above that limit, and allow either party to opt for a trial *de novo* to the extent that they are not satisfied with a higher arbitral award are void as against public policy. The first Illinois case to so hold was *Fireman's Fund Insurance Companies v. Bugailiskis,* 278 Ill. App. 3d 19 (2d Dist. 1996). *Bugailiskis*, relying in part on cases from other states, reasoned that the policy's trial *de novo* clause possessed "some of the earmarks of an adhesive contract" in that it lacked mutuality of remedy and was entered into between parties with unequal bargaining power. Specifically as to the lack of mutuality issue, the court reasoned "that the language allows the insurer to avoid a high award while binding the insured to a low award." *Id.* at 22. Besides the lack of mutuality issue, the policy's trial *de novo* provision, which made the arbitration non-binding even in the absence of any claimed

_____

[2]       LMPC has not brought an action seeking trial *de novo* in this court (typically, the insurer counterclaims for a trial in the insured's action seeking to enforce the arbitral award).

impropriety in the arbitration process, contravened the public policy favoring arbitration: the efficient, cost-effective resolution of disputes. A provision allowing non-binding arbitration, followed by the option of a trial *de novo* if the arbitral award exceeded $20,000, operated to defeat those goals.

Two Illinois cases followed *Bugailiskis*. In *Parker v. American Family Insurance Company,* 315 Ill. App. 3d 431 (3d Dist. 2000), Parker, the insured, received $75,000 in an arbitration. In response to his petition for judgment on the award, the insurance company moved to dismiss and counterclaimed for trial *de novo*. The court agreed with *Bugailiskis* that the trial *de novo* provision had the earmarks of an adhesion contract because it benefitted only the insurer and thus lacked mutuality. Although invalidating the clause as contrary to public policy on the basis of the mutuality argument, the *Parker* court rejected *Bugailiskis'* second ground: that such a policy provision conflicted with state policies favoring arbitration. Illinois, the *Parker* court held, encourages arbitration, whether it is binding or non-binding, so the argument that such a provision contravenes the public policy favoring arbitration is not persuasive.

Finally, in *Samek v. Liberty Mutual Fire Insurance Company,* 341 Ill. App. 3d 1045 (1st Dist. 2003), the court held, in agreement with *Bugailiskis* and *Parker*, that the policy's clause allowing for a trial *de nov*o if the arbitration award was in excess of $20,000 was void as against public policy as lacking mutuality. Such clauses, the court held:

> are inherently unfair because they afford a remedy to insurers, while denying the same to the insured, which means that while both parties are bound by a low award, the insurance company is unlikely to appeal it, but the insured is bound by it. On the other hand, the parties are not bound by a high award, and only the insurer would be likely to reject it.

*Id*. at 1048.

Significantly, there were dissenting opinions in both *Parker* and *Samek*. In *Parker,* Justice Holdridge wrote that the majority's assumption that only the insurance company would seek to avoid an arbitration award [higher than $20,000] was "unsupported." 315 Ill. App. 3d at 436. While acknowledging that the courts of most states had reached the same result as *Bugailiskis*, he wrote that it made no sense to think that a plaintiff who wanted $300,000 from an insurer would not take advantage of a trial *de novo* clause if the arbitrators awarded him only $50,000. And although one might speculate that a trial *de novo* clause was unfairly tilted in favor of the insurer, such a judgment would be nothing but speculation. In *Samek*, Justice Hoffman agreed:

> I have yet to find any argument which supports the proposition that an insured is not likely to reject an award which, although in excess of the minimum liability amount, is far below the amount to which he believes himself entitled.

*Samek*, 341 Ill. App. 3d at 1052.

Indeed, in *Kost v. Farmers Automobile Insurance Association*, 328 Ill. App. 3d 649 (5th Dist. 2002), the scenario imagined by the *Parker* and *Samek* dissenters is precisely what occurred. In *Kost*, Kost, the insured, was fatally injured in an automobile accident. After being paid the policy limits of the other driver's policy, an arbitration was conducted in which the arbitrators awarded Kost's estate $150,000: $300,000 in damages reduced by 50% for negligence on the part of Kost. Dissatisfied with this award, Kost's estate sought a trial *de novo*. The insurance company argued in opposition that the public policy rationale of *Bugailiskis*, *Parker* and *Samek* prohibited trial *de novo*.

While agreeing that trial *de novo* clauses were void as against public policy (they "bear the earmark of adhesion because they lack a mutuality of remedy for the insured and because the insured has little opportunity for arms-length negotiation"), *id.* at 654, the court enforced the clause,

6

reasoning that it would be unconscionable for the insurer, who drafted the unfair provision, to cause the benefit of the provision to be withheld from the insured: "[I]t is of the highest irony that a provision that our courts have found to be against public policy because of manipulative drafting by insurers should now be claimed by defendant to be a shield against an insured's suit." *Id.* at 655.

In *Zappia*, the court again faced a suit brought by an insured dissatisfied with the $31,415.27 awarded to him in non-binding arbitration. This time, however, the court rejected the result of *Bugailiskis*, *Parker* and *Samek*. First, the court held, insofar as those decisions rested on a public policy in favor of arbitration, the public policy of Illinois favors arbitration even when non-binding; this rationale for invalidating non-binding arbitration/trial *de novo* clauses was thus unfounded, as the court in *Parker* had observed. Moreover, the rationale that the provision was void as lacking mutuality was also wrong; the instant case, as well as *Kost*, made plain that there are many cases where the insured is dissatisfied with the decision of the arbitrators and seeks trial *de novo*. The idea that the benefits of such a clause inure entirely to the insurance company is simply unfounded.

The Illinois appellate law can thus be summarized as follows. Two cases followed *Bugailiskis*, holding that a non-binding arbitration/trial *de novo* clause was void as against public policy. One case, *Kost*, ruled that it would agree with the reasoning of those cases if an insurer had asked for trial *de novo*; it was not willing, however, to deny trial *de novo* if the insured were dissatisfied with the arbitral award. Finally, in the most recent case, *Zappia*, the court was again faced, as in *Kost*, with a demand for trial *de novo* by an insured who was dissatisfied with the arbitral award. This time the court rejected the lack of mutuality rationale advanced in *Bugailiskis*, finding that the case before it, as well as *Kost*, made clear that insureds are commonly dissatisfied with the arbitrators' award and themselves want to take advantage of the policies' trial *de novo*

clauses.

The Illinois Supreme Court has touched on this issue in *Reed v. Farmers Insurance Group,* 188 Ill.2d 168 (1999). In a concurring opinion in *Samek*, Justice Wolfson stated that he found "[in *Reed*] a clear signal that [*Bugailiskis*] was correctly decided." 341 Ill. App. 3d at 1051. Because such a signal by the Illinois Supreme Court would be dispositive of this motion, this court has studied *Reed.* With all due respect to Justice Wolfson, it finds no such clear signal.

*Reed* involved a constitutional challenge to section 143a of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/143a. The statute before the court required that disputes regarding *uninsured* (not underinsured) motorist coverage be submitted to arbitration, and that arbitral rewards of less than $20,000 were binding while awards in excess of $20,000 were not. In the event the arbitrators awarded more than $20,000, either party could seek to resolve the claim through the judicial process.

The plaintiff in *Reed* first argued that the statute violated the public policy of Illinois and should not be enforced for that reason. The court rejected that argument, finding that the public policy of Illinois was embodied in the statute being challenged. Second, the plaintiff argued that the statute interfered with the parties' freedom of contract in requiring arbitration binding only to the extent of $20,000 and non-binding otherwise. This challenge, the court noted, required the court to determine whether the statute satisfied the rational basis test. It did, the court held, because "the legislature could well have concluded that mandatory binding arbitration for smaller claims – those falling below $20,000 – would help reduce litigation costs and would promote the speedy resolution of those cases." *Reed*, 188 Ill. 2d at 177. The court could easily have made clear that its result would be different if it were dealing with a contract provision, rather than a statute. But it did not.

While taking note of the factual differences between *Reed* and *Bugailiskis*, the court distinguished *Bugailiskis*.  While the court did not explicitly disapprove of it, it also did not indicate how it would decide it.

As pointed out in Justice Bilandic's dissent in *Reed*, non-binding arbitration/trial *de novo* provisions forbid a trial *de novo* where the arbitral award is small – under $20,000 – and insurers, but not insureds, are invariably happy with small awards; still, one can easily imagine a $20,000 award being more than the insurance company thinks the insured deserves.  But any significant unfairness in such a rule inheres in the assumption that arbitrators will erroneously give plaintiffs less than $20,000 when they deserve much more.  Such an assumption, in this court's view, is entirely speculative and highly unlikely given the basic presumed competence of arbitrators.  It is proven to be wrong – albeit in only two cases – by the facts of *Kost* and *Zappia*, where arbitral awards were above the $20,000 threshold but still inadequate to satisfy the insured.

Even if there is some degree of lack of mutuality in the non-binding arbitration/trial *de novo* provision of Barber's insurance contract, the court finds no basis in Illinois caselaw, excepting *Bugailiskis, Parker* and *Samek,* for invalidating the clause on that basis.  In *Streams Sports Club, Ltd. v. Richmond*, 99 Ill.2d 182 (1983), the Illinois Supreme Court held that a contract is unconscionable when it is "totally one-sided;" "mere disparity in bargaining power is not sufficient grounds to vitiate contractual obligations."  *Id.* at 191.  The fact that the arbitration clause is in a form contract utilized by a large corporate entity does not make it unconscionable; "just because a contract is presented by a party in a superior bargaining position without allowing the other party to negotiate any contract terms does not necessarily mean that the included arbitration clause is unconscionable."  *Zobrist v. Verizon Wireless*, 354 Ill. App. 3d 1139, 1148 (5th Dist. 2005) (citing

*Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999)). Just as "the lack of identical arbitration provisions is not a ground for an automatic invalidation of the arbitration clause," *id.* at 1149, the fact that an arbitration clause modestly favors one side over the other should not be a basis for invalidating it. Indeed, under Illinois law, as long as a contract is supported by mutual consideration – such as an agreement to arbitrate – it is valid; despite the lack of identical arbitration obligations. *Id; see Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 25 n.2, 28 (2005) ("[O]ften, consideration for one party's promise to arbitrate is the other party's promise to do the same." "[M]utality of obligation is not essential.").

In these cases, the court finds no support for the proposition that the small putative advantage the insurance company may derive in some cases from a non-binding arbitration/trial *de novo* provision makes the provision unconscionable. One could easily criticize the wastefulness of non-binding arbitration in this context and opine that the parties would be better off choosing either binding arbitration or litigation. That public policy decision is not, however, for this court to make. The question is simply whether the provision so favors the insurer, at the expense of the insured, that it must be invalidated as unconscionable. The idea that a $20,000 or smaller arbitral award will more often than not please the insurer but not the insured, and the idea that the insured will be regularly and predictably stuck with an undeservedly small but binding award is simply not borne out by the Illinois cases. As in this case, fair arbitrators in appropriate cases will often return arbitral awards in excess of $20,000 and such awards are equally non-binding for both parties. The court sees nothing in the reported cases or in this case which makes such a provision fail for lack of mutuality.

Given the foregoing, Barber's Policy, which - although lacking a trial *de novo* clause, has

the effect of one - is not void as against public policy.  LMPC, therefore, was entitled to reject the arbitral award to the extent that it was in excess of $20,000.

B.  LMPC did not Act Vexatiously and Unreasonably

LMPC also moves to dismiss Barber's Count III, seeking damages for LMPC's vexatious and unreasonable delay in paying the $275,000 arbitral award.  In view of the court's conclusions above, LMPC was obligated to pay only the binding $20,000 part of the arbitrators' decision.  However, the arbitral award was subject to an offset, and Barber had already received in excess of $20,000 from the underinsured driver.  Accordingly, there was nothing LMPC was obligated to pay.

## IV. CONCLUSION

LMPC's motion to dismiss is granted.


ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 22, 2011